# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

ARTHUR L. SMITH, JR.,
   *Petitioner-Appellant,*

v.

HENRY RICHARDS,
   *Respondent-Appellee.*

No. 07-35857

D.C. No.
CV-07-05039-RBL

OPINION

Appeal from the United States District Court
for the Western District of Washington
Ronald B. Leighton, District Judge, Presiding

Argued and Submitted
March 13, 2009—Seattle, Washington

Filed June 23, 2009

Before: William A. Fletcher, Ronald M. Gould and
Richard C. Tallman, Circuit Judges.

Opinion by Judge Tallman

**COUNSEL**

Allen M. Ressler, Ressler & Tesh, PLLC, Seattle, Washington, for the petitioner.

Gregory J. Rosen, Assistant Attorney General, Corrections Division, Olympia, Washington, for the respondent.

**OPINION**

TALLMAN, Circuit Judge:

We must decide whether a pending detainer in one state renders invalid a sex offender's civil commitment in another state. Arthur Smith, a detainee at Washington's Special Commitment Center on McNeil Island, appeals the district court's denial of his petition for a writ of habeas corpus. We have jurisdiction under 28 U.S.C. §§ 1291 and 2253, and we affirm.

**I**

In 1993, a King County Superior Court jury convicted Arthur Smith of rape in the second degree. The details of that crime are not at issue here, and are not fit to print in the public records. The trial court imposed an exceptional sentence of 144 months of confinement and two additional years of community placement.

Smith had been convicted of two prior rapes in Alaska in 1978 and 1979. The facts of those two crimes are also not at issue. He was sentenced to 15 years' imprisonment on each count, to run concurrently. In 1982, he escaped from prison. He was quickly re-apprehended and sentenced to an additional four years, to run consecutive to his sentences for rape. Smith was released on discretionary parole on April 15, 1991.

He reported as directed for about five months, then failed to return. The Alaska authorities had no idea of Smith's whereabouts until he was arrested on August 7, 1992, for the Washington rape.

Upon learning that Smith had been arrested and incarcerated in Washington, Alaska authorities filed a detainer and parole warrant for his failure to report. Alaska requested advance notice of Smith's eventual release from the Washington Department of Corrections so Alaska authorities could take him into custody. The Alaska detainer and warrant were still pending when Smith's term of incarceration in Washington ended[1] and create the unusual circumstances at issue here.

On March 4, 2003, the day before Smith was scheduled to be released from prison in Washington, the King County Prosecuting Attorney filed a petition to have Smith civilly committed pursuant to Washington Revised Code (RCW) 71.09. The matter proceeded to a jury trial, and the civil jury found beyond a reasonable doubt that Smith was a sexually violent predator for purposes of RCW 71.09.020(18). The Superior Court entered an Order of Commitment. Smith appealed, raising statutory and constitutional arguments. The Washington Court of Appeals rejected his claims, and the Washington State Supreme Court denied his petition for review. *In re Det. of Smith*, 122 P.3d 736 (Wash. Ct. App. 2005), *petition for review denied by* 142 P.3d 609 (Wash. 2006).

Smith then filed a petition for writ of habeas corpus under 28 U.S.C. § 2254. The district court concluded the state

---

[1]On October 12, 2008, the Alaska parole board announced that the parole violation warrant was quashed. However, this action did not render Smith's federal habeas petition moot because the warrant and detainer were in place at the time Smith was civilly committed, giving rise to his statutory and constitutional arguments. The government agrees with our conclusion that the claims are not moot.

court's decision was not contrary to, or an unreasonable application of, Supreme Court precedent and denied the petition. We granted a certificate of appealability on the question whether Smith's civil commitment violated his right to due process.

## II

### A

This case is governed by the Antiterrorism and Effective Death Penalty Act (AEDPA), 28 U.S.C. § 2254(d). *See Lindh v. Murphy*, 521 U.S. 320, 327 (1997). Under AEDPA, a writ of habeas corpus shall be denied unless the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). We review *de novo* a district court's decision to grant or deny a habeas petition. *Campbell v. Rice*, 408 F.3d 1166, 1169 (9th Cir. 2005) (en banc).

### B

Washington law provides that "[w]hen it appears that [ ] a person who at any time previously has been convicted of a sexually violent offense is about to be released from total confinement," the prosecuting attorney may file a petition alleging the person is a "sexually violent predator." RCW 71.09.030 (1995) (amended 2009). This petition initiates civil commitment proceedings.

Smith argued before the Washington courts that he was not "about to be released from total confinement" because as soon as his Washington sentence ended, he would be immediately transferred to "confinement" in Alaska pursuant to that state's detainer. He claimed the Washington legislature intended to

address individuals who were about to be released from confinement into the community, not from Washington confinement into another state's confinement. The Washington Court of Appeals rejected Smith's interpretation of the statute, holding that "total confinement" means confinement in Washington state institutions. *In re Smith*, 122 P.3d at 739-40.

The Court of Appeals proceeded to address Smith's claim that this interpretation infringed his liberty interests. Smith argued the court's construction of "about to be released from total confinement" would mean he could be civilly committed even though he posed no threat to the community—he would be safely locked behind Alaskan bars. The Court of Appeals rejected this argument. *Id.* at 740-41. It correctly noted that a state may only limit fundamental liberty interests by regulations that are 1) justified by a compelling state interest and 2) narrowly drawn. *Id.*; *see Washington v. Glucksberg*, 521 U.S. 702, 721 (1997). However, the court concluded that the statute, including the new construction of "about to be released from total confinement," was narrowly tailored to the compelling interest of community safety. It reasoned:

> If the State does not initiate civil commitment proceedings against sexually violent predators such as Smith, it creates the serious risk that such predators will not receive the necessary treatment and will return to Washington and commit further crimes against Washington residents. The requirement of narrow tailoring does not compel this court to accept Smith's interpretation of "about to be released from total confinement."

*In re Smith*, 122 P.3d at 741. We adopt the state court's construction of its statute, *see Bradshaw v. Richey*, 546 U.S. 74, 76 (2005), and consider whether the statute, so construed, violates Smith's federal due process rights.

**[1]** Freedom from physical restraint is at the core of the liberty protected by the Due Process Clause, but states may

nonetheless provide for civil detainment of those who are mentally ill and pose a danger to public safety. *Kansas v. Hendricks*, 521 U.S. 346, 356-58 (1997); *Addington v. Texas*, 441 U.S. 418, 426-27 (1979). Explicit findings of current dangerousness and mental illness are necessary to meet the requirement that the statute be narrowly tailored. *Foucha v. Louisiana*, 504 U.S. 71, 77-78 (1992). These conditions must be proven by clear and convincing evidence. *Addington*, 441 U.S. at 432-33.

**[2]** Though these requirements are constitutional in nature, the Supreme Court recognizes that the standards for mental illness and dangerousness will be defined by state law. *See Hendricks*, 521 U.S. at 357-58 (discussing standard for dangerousness as set forth in Kansas's Sexually Violent Predator Act); *Foucha*, 504 U.S. at 75 (referring to mental illness and dangerousness findings as "statutory preconditions" to civil commitment); *id.* at 82 (discussing the evidentiary burden imposed by the Louisiana statute). Washington's standards for mental illness and dangerousness have been deemed to satisfy due process requirements. *See Seling v. Young*, 531 U.S. 250, 258-64 (2001). A federal habeas court therefore considers only whether a state court's decision unreasonably applied the law or "was based on an unreasonable determination of the facts." 28 U.S.C. § 2254(d)(1)-(2); *see also Lockyer v. Andrade*, 538 U.S. 63, 70-73 (2003).

**[3]** The Washington Court of Appeals reasonably assessed the law and facts according to the standards defined in RCW 71.09. The court explained that Smith remained dangerous because he might go to Alaska and serve his time, but could readily return to Washington and re-offend. This prediction is entirely reasonable. Smith has already committed one crime in Washington while on Alaska parole. Alaskan authorities obtained the warrant because Smith had disappeared while on parole, and Smith's parole supervisor labeled him "likely to flee." His argument that the Alaska detainer renders him harmless to the Washington community might be persuasive

if he were facing a life sentence. However, assuming his parole is revoked, Smith will serve only 215 days in prison in Alaska before being released to community supervision. The possibility that he will present a threat to the Washington community even if released to Alaska authorities is quite substantial.

**[4]** Smith also contends he would not pose a threat to the Washington community because Washington could extradite him and re-initiate civil commitment proceedings at the end of his Alaska imprisonment. The argument fails. The Washington Court of Appeals concluded that, as a matter of Washington law, Washington authorities would lose jurisdiction to civilly commit Smith if he were extradited to Alaska. *In re Smith*, 122 P.3d at 740. Though Washington could enforce Smith's term of community placement after he served his Alaska sentence, it could not re-initiate civil commitment proceedings. *See* RCW 71.09.025, 71.09.030. This holding supports the Washington court's conclusion that Smith would remain dangerous to the Washington community.

The Supreme Court has not clearly spoken on the question of how, if at all, one state's detainer affects another state's application of its laws in this context. This silence alone is sufficient to uphold the Washington Court of Appeals decision under AEDPA. *See Carey v. Musladin*, 549 U.S. 70, 77 (2006).

**[5]** We therefore conclude that the Washington Court of Appeals reasonably applied federal law in holding Washington's civil commitment statute was narrowly tailored. The court also reasonably assessed the facts in determining that Smith would remain a threat to the community even if he were temporarily incarcerated in Alaska. Any restraint on Smith's liberty derives solely and independently from these valid legal and factual determinations. The pending Alaska detainer does not render unconstitutional Smith's permissible civil commitment.

## C

Smith next alleges the detainer will prevent him from ever meeting Washington's requirements for conditional release. His argument relates to RCW 71.09.090, which provides for conditional release to a less restrictive alternative, and RCW 71.09.092, which sets forth certain findings a court must make before conditional release may be granted.

We decline to reach this argument because it "is not only unexhausted, it is actually raised for the first time on this appeal." *Lopez v. Schriro*, 491 F.3d 1029, 1039 (9th Cir. 2007). Smith's due process arguments before the state courts and district court rested solely on RCW 71.09.030. We granted a limited certificate of appealability with respect to the question "whether [Smith] was denied due process by the state court's application of RCW 71.09.030." None of the materials below mention RCW 71.09.090 or 71.09.092. Smith cannot "sweep this claim" within his due process challenge to RCW 71.09.030. *Lopez*, 491 F.3d at 1039. We therefore decline to expand the certificate of appealability to address this issue.

## III

The Washington Court of Appeals reasonably applied federal law in concluding that Smith's civil commitment did not violate due process.

AFFIRMED.